**FIRST SAVINGS AND LOAN INSURANCE CORPORATION, a federal corporation, Plaintiff,**

v.

**Denis D. ALEXANDER, Clifford K. Fujiwara, Glenn K. Okada, William E. Takabayashi, Richard A. Cooke, Jr., Michael Provan, and Henry K.F. Kersting, Defendants.**

**FIRST HAWAIIAN BANK, Plaintiff,**

v.

**Denis D. ALEXANDER, Richard A. Cooke, Jr., Clifford K. Fujiwara, Glenn K. Okada, William E. Takabayashi, Henry K.F. Kersting, Michael Provan, and Paul Simplson, Defendants.**

Civ. Nos. 82–0299, 82–0090.

United States District Court, D. Hawaii.

·July 9, 1984.

Steven H. Levinson, Diane D. Hastert, Honolulu, Hawaii, for plaintiffs.

Alexander C. Marrack, Honolulu, Hawaii, for Richard A. Cooke, Jr.

John A. Chanin, Honolulu, Hawaii, for Clifford K. Fujiwara.

Walter G. Chuck, W. Gregory Chuck, Honolulu, Hawaii, for Glenn K. Okada and William E. Takabayashi.

Thomas P. Dunn, Honolulu, Hawaii, for Henry K.F. Kersting.

George W. Brandt, Gail M. Kang, Lyons, Hagerman & Brandt, Honolulu, Hawaii, for Denis D. Alexander.

## OPINION AND ORDER

PENCE, District Judge.

On February 25, 1980, the State of Hawaii placed First Savings and Loan Association ("First Savings") in receivership. The Federal Home Loan Bank Board ("FHLBB") federalized that receivership and appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as receiver. Pursuant to that receivership, FSLIC sold the assets and liabilities of First Savings to First Federal Savings and Loan Association ("First Federal") on February 25, 1980.

First Savings, through its directors, filed two suits against FSLIC and others, one on February 26, 1980 and the other on May 7, 1981, alleging that the receivership was improper and illegal. Both suits were dismissed. *See First Savings & Loan Association, et al. v. First Federal Savings & Loan Association of Hawaii, et al.,* 547

F.Supp. 988 (D. Hawaii 1982); *First Savings & Loan Association v. First Federal Savings & Loan Association et al.*, 531 F.Supp. 251 (D. Hawaii 1981).

On February 24, 1982, the First Hawaiian Bank ("FHB"), as the assignee of the claims of the First Savings stockholders, filed suit against the directors of First Savings at the time of the receivership. The suit alleged, primarily, that the directors had mismanaged First Savings to the detriment of First Savings and the stockholders.

FSLIC filed suit against the directors on June 9, 1982, on substantially the same grounds alleged in the FHB action. The FSLIC and FHB actions were consolidated on August 18, 1982. Answers to the complaints were filed by all the defendants except three by July 19, 1982. A default judgment has been entered against one of the defendants, Michael Provan, and two other defendants, Okada and Takabayashi, were given leave to file their Answers by Order of the Court of April 11, 1984.

Defendants Fujiwara, Alexander, Cooke, Okada, and Takabayashi now seek leave to amend their original Answers to include further defenses, cross-claims, counterclaims and third-party claims and bring in new parties, i.e., Federal Home Loan Bank Board ("FHLBB") and Federal Home Loan Bank-Seattle ("FHLB-S").

Defendants move for leave to amend their answers to the complaints. Plaintiffs request a discovery conference order limiting discovery and tentatively identifying the issues for discovery purposes, i.e., and order from this court precluding the defendants from inquiring into the twenty (20) areas listed in Appendix A.

## 1. *Motion for Leave to Amend Answers to the Complaints*

Defendants now desire to add various counterclaims and third-party claims in the consolidated actions. In essence, these new claims charge plaintiffs and various third parties with the following:

1. Knowledge of defendant Henry Kersting's unsavory reputation with respect to other savings and loan associations and failure to divulge this information to the defendants;

2. Mismanagement of First Savings in the role of receivership;

3. Pre- and post-receivership bad faith, arbitrariness and capriciousness in dealing with First Savings and the defendants;

4. Knowledge of FHB loan to First Savings secured by First Savings stock and failure to warn defendants of this loan transaction;

5. Knowledge of or participation by FHB in an illegal compensating balance scheme with First Savings which caused the liquidity crisis that forced First Savings into insolvency and the ensuing receivership; and

6. Unconstitutionality of 12 U.S.C. §§ 1464 and 1729, on their face and as applied to defendants, in that they operated to deprive First Savings and defendants of valuable property rights without due process of law, in violation of the Fifth Amendment.

■ F.R.Civ.P. 15(a) permits a party to amend his pleadings by leave of court after 20 days have passed since the filing of the original pleadings. Rule 15(a) states that "leave shall be freely given when justice so requires." If an amendment adds a party to the action, the claim asserted against such party must have arisen out of the "conduct, transaction, or occurrence set forth in the original pleading", and if so, the amendment relates back to the date of the original pleading. Rule 15(c).

■ On their face, the proposed amendments do state claims that arose out of the original transaction, i.e., the failure and insolvency of First Savings. However, leave to freely amend is not warranted if there would be substantial prejudice to the opposing party or the proposed amendments would fail to state a claim upon which relief could be granted.

■ Under these conditions, the following proposed amendments cannot be added to defendants' original answers:

(A) Defendants' claims that FSLIC, FHLBB, FHLB–S, FHB and the United States failed to warn defendants of Henry Kersting's reputation and/or the FHB loan secured by First Savings stock ("FHB loan").

These allegations fail to state a claim upon which relief can be granted, for two reasons. First, defendants allege negligent misrepresentation on the part of the United States and the various federal agencies. Under the Federal Tort Claims Act no action can be maintained against the government or its agents for negligent misrepresentation. Second, plaintiffs and proposed third-party defendants (FHLBB, FHLB–S, United States) did not have a duty to warn defendants of either Henry Kersting's unsavory financial reputation or of the FHB loan to First Savings.

 Assuming defendants' facts to be true, they merely allege that FSLIC and others were negligent in not informing defendants of Kersting's questionable activities in the past. The gravamen of this claim is negligent misrepresentation, which is excepted from the Federal Torts Claim Act (FTCA) under 28 U.S.C. § 2680(h), which states, in pertinent part, that the FTCA does not apply to "(h) Any claim arising out of ... misrepresentation, deceit ...." The United States has not consented to be sued for misrepresentation or deceit. Thus, no counterclaim or third party claim alleging negligent misrepresentation on the part of the United States or its agents can be asserted against the government parties. Defendants' allegation that the plaintiffs and others failed to warn them of Kersting and the FHB loan is but a claim for misrepresentation or failure to disclose and, as such, is barred by § 2680(h) of the FTCA. *Redmond v. United States, Securities and Exchange Commission,* 518 F.2d 811 (7th Cir.1975); *City and County of San Francisco v. United States,* 615 F.2d 498 (9th Cir.1980).

In addition, even if defendant's claims could be construed as alleging a cause of action other than negligent misrepresentation, such claims still fail to state a claim upon which relief can be granted. The government agencies had no duty to warn defendants of Kersting or the FHB loan. *In Re Franklin National Bank Securities Litigation,* 445 F.Supp. 723, *aff'd on rehearing,* 449 F.Supp. 574 (E.D.N.Y.1978); *Emch v. United States,* 630 F.2d 523, 527 (9th Cir.1980), *cert. denied,* 450 U.S. 966, 101 S.Ct. 1482, 67 L.Ed.2d 614 (1981); *First State Bank of Hudson County v. United States,* 599 F.2d 558 (3d Cir.1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980).

Thus, as a matter of law, this court finds that there was no duty on the part of FSLIC, FHLBB, FHLB–S, or the United States to warn defendants of either the unsavory financial reputation of Henry Kersting, or the loan by FHB secured by First Savings' stock. Therefore, this claim does not and cannot state a claim upon which relief can be granted. The motion to amend is hereby DENIED.

(B) Defendants' claims that FHB also had a duty to warn defendants of Kersting and the FHB loan.

Defendants' new allegations run up against the very valid contention by FHB that it is too late in these proceedings for the defendants to bring such matters before the court. It is difficult for this court to believe that the defendants did not know, or should not have known, about the loan by FHB secured by First Savings stock until now. This loan transaction took place years *before* First Savings was placed into receivership. Directors of banks have a duty to inform themselves of these types of transactions. *Atherton v. Anderson,* 99 F.2d 883, 889–90 (6th Cir.1938). *See also Joy v. North,* 692 F.2d 880, 896 (2nd Cir. 1982), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983).[1] In addition,

1. The court in *First State Bank of Hudson County, supra* at 562, recognized as a general principle of banking law that a director of a bank is personally liable for any resulting loss "[i]f,

through recklessness and inattention to the duties confided to him, frauds and misconduct are perpetrated by other officers and agents or codirectors, which ordinary care on his part

defendants have not supported, by affidavit or otherwise, the allegation that FHB was aware of Kersting's reputation.

■ The decision to grant leave to amend is discretionary. Delay by a party seeking leave to amend a complaint or pleading may not alone foreclose amendment, but if prejudice results to another party, then leave to amend may be denied. In addition, if the amending party knew or should have known the facts upon which the amendment is based at the time of the original pleading, then leave to amend should be denied unless there is excusable neglect or oversight. *See Jordon v. County of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 45 (1982).

■ In the present proceeding, FHB has alleged that it will be severely prejudiced should these counterclaims be permitted. In addition, FHB points out that these claims and the facts surrounding them, were well known to the defendants when the original answers were filed, almost two years ago. Defendants have not provided any reasons for their neglect in pursuing these claims earlier. Therefore, this court finds that it would prejudice the plaintiff, FHB, to permit these counterclaims against it. Leave to amend to permit these counterclaims is therefore DENIED.

(C) Defendants' claims against FSLIC and the United States, alleging they mismanaged the bank in their roles as receiver.

These new allegations fail to state a claim upon which relief can be granted.[2]

■ There is a distinction between discretionary or policy functions and operational functions. Once the government undertakes an operative task, it cannot act negligently without liability. *In Re Franklin Securities* involved the FDIC actually taking over the day-to-day control of a bank in receivership. The court held that this was not a discretionary function any longer, but was operational in nature. Thus, the FDIC could not act negligently and escape liability. 445 F.Supp. at 735.

In *Guild v. United States*, a key distinction was noted by the court between performance of operational tasks and communication of information. 685 F.2d 324, 325 (9th Cir.1982). The government was held liable for injuries relating to the negligence in performance of a task, even if misrepresentations were collaterally involved. *Id.* at 326.

■ In the instant matter, while FSLIC, and hence the United States, did actually manage the bank as receiver, FSLIC only acted as such for a period of four (4) hours. In such a short time period, this court cannot here envision how FSLIC could possibly have been negligent in *operating* First Savings. Indeed, defendants do not allege any specific negligent acts on the part of FSLIC as a receiver. Under these factual circumstances, therefore, defendants have failed to state a claim upon which relief could be granted, hence leave to amend to include such a claim is DENIED.

(D) Defendants' claims that FSLIC evidence pre- and post-receivership bad faith, arbitrariness or capriciousness in dealing with the defendants and First Savings.

These allegations are extremely broad, vague, and fail to state a claim upon which relief can be granted.

While *In Re Franklin Securities* suggests that allegations of grossly arbitrary or capricious actions on the part of the government state a claim for relief under the FTCA, 445 F.Supp. at 734, that statement was in the context of the FDIC mis-

would have prevented," *citing* 1 Michie on Banks and Banking, ch. 3, § 63.

2. Before dispensing with the proposed claims, it must be noted that this court rejects plaintiffs' procedural argument that such claims are barred by § 2401(b), which requires administrative exhaustion before claims against the United States or its agents may be brought into court. These particular claims are counter or third-party claims, hence under § 2675(a), defendants need not meet the requirement of administrative exhaustion.

managing a bank as a receiver. This aspect of FSLIC acting as a receiver has been discussed immediately above, in (C). Defendants give no indication whatsoever of what acts of FSLIC were arbitrary or capricious. At this late date, such vague counterclaims cannot be permitted. To allow such a claim to be brought would, in essence, allow defendants to go on a "fishing expedition" in attempts to discover "possible" bad faith actions by FSLIC.

(E) Defendants' claims that FHB participated in an illegal compensating balance scheme with First Savings, causing the liquidity crisis which put First Savings into insolvency and receivership.

■ These allegations are proposed so late in this action as to be prejudicial to FHB. As was previously observed, the delay by the defendants in bringing this type of counterclaim is very prejudicial to FHB. Defendants do not explain the delay, except to assert that they recently discovered this compensating balance scheme while sifting through thousands of documents. Again, the record discloses that several of the defendants knew of the compensating balance transaction before February 25, 1980, and all of the defendants, as directors of First Savings, *should have known* of this allegedly illegal transaction with FHB. To allow such a claim now would bring forth a tremendous amount of discovery and would be extremely prejudicial to FHB. Therefore, leave to amend to include such a claim is DENIED.

(F) Defendants' claims that 12 U.S.C. §§ 1464 and 1729 are unconstitutional.

■ These allegations do not arise out of the same transaction and occurrences as the original pleadings. Plaintiffs are suing defendants for mismanagement of First Savings. That defendants felt the imposition and conduct of the receivership was void of due process does not go to the merits of plaintiffs' claims. Indeed, such an argument does not relate to the claim of mismanagement at all.

If there were any merit therein, defendants should have brought these claims at the time they filed their original answers.

Defendants had ample opportunity to do so. These constitutional claims may not now be properly brought as part of the issues in this case. The motion to amend to set forth such claims is DENIED.

2. *Motion for Discovery Conference Order*

Plaintiffs seek a discovery conference order pursuant to F.R.Civ.P. 26(f) which encompasses requests for limitations on proposed discovery. Plaintiffs propose that discovery into the areas listed in Appendix A be precluded. Defendants argue that those "precluded" areas, as designated by plaintiffs, are relevant to the issues in the case or designed to lead to relevant material.

■ While F.R.Civ.P. 26(b) allows a very broad scope of discovery, the burden of persuasion that matters sought to be discovered are not relevant falls on the party opposing such discovery. Once that burden is satisfied, the party seeking discovery may not rest merely on the assertion that it is designed to lead to relevant information but must produce some evidence that the area to be precluded is, in fact, relevant.

■ Here, plaintiffs have met this burden of showing irrelevancy and, except as to numbers 5 and 18, defendants have not shown any evidence to the contrary. All parties are hereby precluded from instituting discovery into the following areas (numbers refer to the numbered paragraphs in Appendix A):

1. All matters concerning the propriety of the institution and conduct of the First Savings receivership established by the State of Hawaii and "federalized" by the Federal Home Loan Bank Board.

This area of information is immaterial to the issues raised by the pleadings, and it does not appear to lead to any relevant or admissible evidence.

2. Federal regulatory investigation of Investors Financial Corporation holding company application and all matters relating thereto.

This information has already been given regarding the investigation of Investors Financial Corporation, except as to certain individuals, unspecified by defendants. If defendants, at a later date, specify whom they wish to depose and why, then this court will consider such issues at that time.

3. The original purchase of First Savings stock by a pilot group represented by Henry Kersting and all related matters, including, but not limited to, a loan transaction by which FHB financed the purchase of approximately 90% of First Savings stock, the process by which FHB obtained assignments of the causes of action of certain of the stockholders against the former directors and officers of First Savings.

This court has previously ruled that the FHB loan and the assignment of the shareholders' rights of First Savings to FHB were irrelevant. Nothing has been produced by defendants to alter that finding of irrelevancy.

4. Relationships, agreements, correspondence or communications of any nature at any time, if any, between or on behalf of FSLIC and FHB, Kersting, Alexander, Weisman, Slaton, Dunn, Nevels, and/or Provan, except with respect to the day-to-day operations of First Savings.

Defendants argue that discovery into this area would result in evidence of collusion between plaintiffs and certain defendants, thus precluding jurisdiction by this court over these consolidated cases.

A collusive action is a contrived case in which there is no actual dispute between the parties, and one party controls the litigation so as to bring about a predetermined result. *First National Bank in Mena v. Nowlin*, 374 F.Supp. 1037, 1038, n. 1 (E.D.Ark.1974), *aff'd*, 509 F.2d 872 (8th Cir.1975).[3] A controversy as to the liability of defendants for the demise of First Savings certainly exists. The court has already ruled that it has jurisdiction over the

present action. As such, not only would the requested discovery be onerous and burdensome to the plaintiffs, it would not lead to any relevant or admissible evidence.

6. Projections, reports, studies, surveys, summaries or "scenarios", if any, prepared by or relied upon by FHLBB, FHLB–S, and/or FSLIC at any time with respect to long term residential mortgage loans, time-deposit accounts for member institutions, certificates of deposit other than jumbo certificates, jumbo certificates for various terms, interest rates charged by any Federal Home Loan Bank to member institutions for various terms.

It is entirely up to FSLIC and FHLBB when to lend any member institutions any money or when to put them into receivership. These actions are within these agencies' discretion. Every time such an action is taken, it perforce is based upon the particular facts of the then existent situation; no two situations are alike. As such, no information gleaned from discovery into this area would have any bearing on whether the defendant directors mismanaged First Savings. This area is immaterial to the issues involved in this action.

7. Authors, spokespersons, agents or representatives of FHLB–S, FHLBB and/or FSLIC who have been authorized to speak on or write publicly regarding "regulatory policy matters" during the years 1978 to the present.

This court is satisfied that such a discovery request would not lead to any relevant material. How FSLIC deals with one institution has no relevance as to how it deals with other institutions. In addition, such open-ended discovery would be a great burden on plaintiffs.

8. Authored reports, speeches, or press releases, if any, written or otherwise made by authors, spokespersons, agents and/or representatives on behalf of FHLB–S, FHLBB, and/or FSLIC during the years 1978 to the present with

---

3. The fact that some defendants might concede the plaintiffs' case does not destroy the controversy when other defendants remain in active

dispute. *Goosby v. Osser*, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973).

respect to the effect of upward interest rate trends upon member institutions, the effect of state usury laws, efforts by member institutions to sell loans on the secondary market or by private placement; desirability to enforce FHLBB and FSLIC regulations differentially between big and small member institutions or according to their size; the effect of bunching regulations contained in 12 C.F.R. § 526.10 upon member institutions' operations and compliance therewith; policies governing availability and use of advances from FHLBB; FHLBB or FSLIC guidelines for imposing receiverships; disintermediation or other problems affecting financial resources of member institutions.

Not only would such a discovery request be exceedingly onerous to plaintiffs, it would not lead to any relevant evidence. This court must emphatically stress that it is the *particular* facts of any particular situation that determine how FSLIC or FHLBB deal with member institutions. That FSLIC or FHLBB dealt with one member institution in one manner is not evidence of illegal or discriminatory treatment of another member institution dealt with in a different manner. For these reasons, such discovery is properly precluded.

9. All matters of any nature respecting "bunching" regulations other than application of same to First Savings during the period from March 1978 through February 1980.

10. All matters concerning regulatory violations of any nature of member institutions, other than First Savings, for any time period.

11. Assistance agreements and all matters related thereto, entered into between FHLBB, FHLB–S, and/or FSLIC and any member institution, other than First Savings, for any time period.

12. Efforts, if any, by FHLB–S, FHLBB and/or FSLIC to offer for sale or otherwise "shop" any member institution, other than First Savings, during any time period.

13. FHLB–S, FHLBB and/or FSLIC investigation or review, if any, of persons who own, manage or are affiliated with, or otherwise control member institutions at any time, including, but not limited to, Kersting and Alexander.

14. Requirements, if any, for the use by any regulatory agency of spread assistance agreements, income capital certificates, assistance agreements, emergency credit.

15. Records, if any, maintained by FHLB–S, FHLBB and/or FSLIC with respect to persons who have been involved with insolvent member institutions.

16. Ways, if any, by which FHLB–S, FHLBB and/or FSLIC communicate information to the directors, officers, or owners of a member institution pertaining to an individual's questionable ability to operate or control a member institution.

17. Mechanisms, if any, used by FHLB–S, FHLBB and/or FSLIC to inform state regulatory agencies of information concerning an individual's qualifications to manage or control a member institution.

19. Receiverships and/or insolvencies of member institutions, other than First Savings, at any time.

20. Federal regulatory activities of any nature at any time with respect to member institutions other than First Savings.

The same ruling as that respecting the discovery previously precluded applies to numbers 9–20. Such discovery requests are too broad, too burdensome and irrelevant to the issues in this action.

As to the discovery requested in paragraph 13, *supra,* this court emphasizes that FSLIC, FHLBB or FHLB–S had no duty to warn the directors of First Savings of other directors' evil tendencies. Any discovery into the internal mechanisms by which FSLIC or FHLBB investigates directors of member institutions is thus irrelevant.

There are, however, two areas of discovery which plaintiffs have requested be

precluded that this court finds relevant to the pending action.

5. Arrangements, if any, made by the plaintiffs with respect to the disbursements of monies recovered in these consolidated matters or any assignment of any rights of recovery against any of the defendants.

The interest of a witness in the outcome of a case obviously affects the credibility of his testimony. However, though the issue of credibility may be of vital importance and ultimately determine the outcome of a lawsuit, it may not necessarily be relevant to the subject matter of the litigation. Under the present circumstances, the credibility of certain witnesses obviously would be relevant to the subject matter of the case. *See United States v. International Business Machines Corp.*, 84 F.R.D. 651 (S.D. N.Y.1979). This court is satisfied that defendants have proffered more than a general allegation of relevancy. Thus, defendants have overcome plaintiffs' specific objections to discovery of agreements between plaintiffs and defendants.

Defendants may obtain copies of any agreements between plaintiffs and any other person which might result in a recovery by any defendant should the plaintiffs succeed in this action. This order is for the purpose of enabling defendants to attack the credibility of certain witnesses, i.e., co-defendants.

18. The management or mismanagement of First Savings prior to March 1978, if any.

Defendants must be allowed discovery into this area in order to ascertain the condition of First Savings when defendants first took over as directors. Such discovery goes to the value of First Savings and would be a basis for challenging the experts on such value.

IT IS SO ORDERED.

## APPENDIX A

1. All matters concerning the propriety of the institution and conduct of the FS receivership established by the State of Ha-

waii and "federalized" by the Federal Home Loan Bank Board ("FHLBB");

2. Federal regulatory investigation of an Investors Financial Corporation ("IFC") holding company application and all matters relating thereto;

3. The original purchase of FS stock by a pilot group represented by Henry Kersting ("Kersting") and all related matters, including, but not limited to, a loan transaction by which FHB financed the purchase of approximately 90% of FS' stock, the process by which First Hawaiian Bank obtained assignments of the causes of action of certain of the stockholders against the former directors and officers of First Savings & Loan;

4. Relationships, agreements, correspondence, or communications of any nature at any time, if any, between or on behalf of the FSLIC and FHB, Kersting, Denis Alexander ("Alexander"), Lawrence Weisman, Randolph Slaton, Thomas Dunn, Luman Nevels, and/or Michael Provan, except with respect to the day-to-day operations of FS;

5. Arrangements, if any, made by the plaintiffs with respect to the disbursements of monies recovered in these consolidated matters or any assignment of any rights of recovery against any of the defendants;

6. Projections, reports, studies, surveys, summaries or "scenarios", if any, prepared by or relied upon by the FHLBB, the Federal Home Loan Bank-Seattle ("FHLB–S"), and/or the FSLIC at any time with respect to long term residential mortgage loans, time-deposit accounts for member institutions, certificates of deposit other than jumbo certificates, jumbo certificates for various terms, interest rates charged by any Federal Home Loan Bank to member institutions for various terms;

7. Authors, spokespersons, agents or representatives of the FHLB–S, FHLBB and/or FSLIC who have been authorized to speak on or write publicly regarding "regulatory policy matters" during the years 1978 to the present;

8. Authored reports, speeches, or press releases, if any, written or otherwise made by authors, spokespersons, agents and/or representatives on behalf of the FHLB-S, FHLBB and/or FSLIC during the years 1978 to the present with respect to the effect of upward interest rate trends upon member institutions, the effect of state usury laws; efforts by member institutions to sell loans on the secondary market or by private placement; desirability to enforce FHLBB and FSLIC regulations differentially between big and small member institutions or according to their size; the effect of bunching regulations contained in 12 C.F.R. § 526.10 upon member institutions' operations and compliance therewith; policies governing availability and use of advances from the FHLB; FHLB, FHLBB or FSLIC guidelines for imposing receiverships; disintermediation or other problems affecting financial resources of member institutions;

9. All matters of any nature respecting "bunching" regulations other than application of same to FS during the period from March 1978 through February 1980;

10. All matters concerning regulatory violations of any nature of member institutions, other than FS for any time period;

11. Assistance agreements and all matters related thereto, entered into between the FHLB, FHLBB and/or FSLIC and any member institution, other than FS, for any time period;

12. Efforts, if any, by the FHLB, FHLBB and/or FSLIC to offer for sale or otherwise "shop" any member institution, other than FS, during any time period;

13. FHLB-S, FHLBB and/or FSLIC investigation or review, if any, of persons who own, manage or are affiliated with, or otherwise control membr institutions at any time, including, but not limited to, Kersting and Alexander;

14. Requirements, if any, for the use by any regulatory agency of spread assistance agreements, income capital certificates, assistance agreements, emergency credit;

15. Records, if any, maintained by the FHLB, FHLBB and/or FSLIC with respect to persons who have been involved with insolvent member institutions;

16. Ways, if any, by which the FHLB, FHLBB and/or the FSLIC communicate information to the directors, officers, or owners of a member institution pertaining to an individual's questionable ability to operate or control a member institution;

17. Mechanisms, if any, used by the FHLB, FHLBB and/or FSLIC to inform state regulatory agencies of information concerning an individual's qualifications to manage or control a member institution;

18. The management or mismanagement of FS prior to March 1978, if any;

19. Receiverships and or insolvencies of member institutions, other than FS, at any time; and

20. Federal regulatory activities of any nature at any time with respect to member institutions other than FS.